Next case is I.G. Licensing, S.A. v. Honeywell et al., 2023-11-37. May I begin then, Your Honors? I think we're ready, so please proceed. Yes, Your Honor. Good morning, and may it please the Court, Your Honor. Your Honor, there are a group of 3GPP references in this case that are necessary to revalidate the 625 patent's claims in the board dead period. The 625 patent was filed on March 31, 2005, but properly derives its April 2, 2004 priority date from a Korean application. The 3GPP references post-date this April 2, 2005. Well, that's the question, isn't it? It doesn't disclose E-A-G-C-H. Yes, Your Honor, that is what the board found. That's what you need to get around the 3GPP reference. Yes, Your Honor, in order to get the access to that Korean application's priority date. And that is why, the reason why the board found that it did, and found that we did not have access to that priority date, was due to its erroneous claim construction of the term, Enhanced Absolute Right Channel. In short, the board found that the term requires the Enhanced Absolute Right Channel to pertain solely to absolute rights. The error the board had, though, was because it began its claim construction by looking at extrinsic evidence, by starting with the 3GPP's version of that channel, and then looking to the 625 packet itself to determine whether or not it displayed that extrinsic definition. By engaging in that type of digital analysis, which this court sort of ruled time and time again. Counsel, I have a question for you, which is, if I agreed with the board's claim construction, but I first looked at the specification and the intrinsic evidence, and then looked at the extrinsic evidence, but thought that the board was correct in its construction, since I reviewed de novo, isn't any error that you're talking about, then, harmless error? No, you're wrong. Because the, well, if your honor was to reach the same conclusion by following the appropriate analysis, then your honor would be following the proper procedure and protocol. However, even if your honor were to agree with the board's ultimate conclusion, there is still the fact of the matter that the Korean application does in fact disclose the concept of absolute grants itself. And thus, there is no substantial evidence to support the board's ultimate conclusion that it's not disclosed. Okay, let me ask you a claim construction question. If the claim language itself uses the word absolute grant in it, how do you get around that? To me, that's pretty compelling that it uses that word when describing what the channel is. Well, your honor, the claim language itself uses the abbreviation E-A-G-C-H, which is explicitly... And it says absolute grant. It says enhanced absolute grant channel, then it gives the E-A-G-C-H in parentheses, right? I think that's claim 16 I'm looking at. Yes, your honor. I did not mean to imply that there was a distinction between the two. What I mean to say, your honor, is that it uses that term E-A-G-C-H, enhanced absolute grant channel, but that term is itself explicitly defined. And that term, as defined in column 3, and then later to some extent in column 4 of the specification, that term contains no requirement that it be limited to solely absolute grant. I think that you're relying on lines 14 to 16, right? Yes, your honor. And then to a lesser extent in that same column, lines 43 through 60. But yes, the main lines there would be 14 through 25. Can I ask you, why isn't the language at lines 17 to 19 enough to show that this is actually talking about an absolute grant as opposed to a relative grant, where it says no B transmits a command as to how much transition power or a level of data rate transmission a U-E is permitted to transmit? I mean, why isn't that an absolute grant? Well, your honor, the reason is that that definition applies both to absolute and to relative grants. Why? The distinction between an absolute and a relative grant... I apologize. Yeah, no, go ahead. Continue. Sure. The distinction between an absolute and a relative grant is not... Let me backtrack. Both an absolute and a relative grant define the maximum amount of bandwidth a user equipment is allowed to use. The distinction is that an absolute grant tells the user equipment, your maximum bandwidth is X. The relative grant says, you previously were allowed X. We are going to increase that or decrease that by a lot. So a relative... I assume we understand that. I'm still trying to understand where it just says how much transition power. Would that be enough to say, you know, I'm telling you how much transition power, stop. That means I'm telling you how much, not relative to anything, but just how much. Yes, Your Honor, I would agree with that. That would encompass an absolute grant, but it also encompasses a relative grant because it's saying what your maximum amount is. It's just saying that relative to the previous maximum, your new maximum is either increased or decreased. So it encompasses both. There's no restriction to be just the one. Under your understanding of the claim term, what does absolute mean? Absolute means that it does not pertain to or does not refer to a prior maximum in the way that a relative grant necessarily does. Absolute just says, your maximum is this. That is what the absolute means. The relative is, your maximum is this. It's just increased or decreased from a prior maximum. So do you agree that what you just explained, as your understanding of absolute, does have to be part of the proper construction of EAGCH? I agree with that, Your Honor. At no point are we saying that the Enhanced Absolute Grant Channel does not cover absolute grant. It's just not limited to solely absolute grants. That's the point of the claim. Okay, well then help me out on that latter part. Why is it not limited to that when the patent distinguishes between EAGCH and the relative channels? Certainly, Your Honor. Well, if we take a look at the definition of the relative channel, which we find here in column 4, the distinction that is written by the patentee is that the Enhanced Relative Grant Channel, the transmission channels are pre-allocated on their lead. That's the only two pre-leads of the pre-allocated channel I'm sorry. I was having a little trouble hearing you. Were you just reading from column 4, or did you add something to that? No, Your Honor. I was just reading from column 4, lines 47 through 57. I was specifically reading from the sentence at line 53 down. The important point here is that when the distinction between the two channels is discussed in the specification, it's referring to the amount of duty on the channel that are being transmitted to, not that one handles only relative and one handles absolute. That's the distinction there that the patentee issues. I have a question about claim construction process. If this, in fact, is a term of art, have we ever said that the board or a court can't start by looking to extrinsic evidence to understand is something a term of art, and if so, what is its meaning? Yes, Your Honor. This court has ruled that there is a place for that extrinsic evidence. The board may certainly look there, but it cannot be the end all. As we know in Phillips and as we've seen, it actually... Right, it can be the starting point, the extrinsic evidence, but the analysis overall has to, I think we say, center on the intrinsic. Would you agree with that? Yes, Your Honor. But again, there is additional case law which says that when the intrinsic evidence itself is clear, one may not even turn to the extrinsic evidence. I believe I'm thinking here, Your Honors, Nye Strong, Trustees of Columbia University, of course, and CFAGIA Solutions, where this court said that if the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence whatsoever, being outside that court there. Be that as it may, don't you have to show us that the patent owner here was being his or her own lexicographer in order to succeed? And doesn't lexicography require some sort of clear definition? I mean, here you're asking us to understand that an enhanced absolute grant channel doesn't just send absolute grants. It feels kind of like a negative limitation, and my problem is that I'm having a hard time reading the definition, what you're pointing to as the definition in column three as excluding absolute, saying it's not limited to absolute grants. It's describing what the channel is in ways that doesn't really address whether it's talking about absolute or relative grants. And because the words absolute grant are in the language of the claim itself, the enhanced absolute grant channel, I'm having a hard time understanding how I'm clearly supposed to say, notwithstanding the fact that it says absolute grants, it's not limited to that. Well, Your Honor, the specification has to be read in the context. Apologies, Your Honors. The specification needs to be read in the context of the entire patent. And from the perspective of the post here, bringing to it what they have. And so when we look at the clear language, the fact that the clear language does not mandate one or the other. And the fact that the enhanced absolute grant channel may be able to carry, or can carry absolute grants, but is not so limited. What the patent owner's position here is simply that we're not asking you to read out the word absolute grant from the name. We're saying that, based on this court's case law, you can't read it in as a requirement. Not without something more explicit than what's here in the intrinsic evidence. And you certainly can't import that limitation from an extrinsic source. That is the original series of questions. But what if I think it's not imported from an extrinsic source? I think it's imported from the specification in the plain claim language itself. And I think a POSA would know what an absolute grant is. I mean, this goes a little bit to Judge Stark's point as well, which is that even when you look at Phillips and it says, OK, first start with the plain claim language, you're supposed to look at what a person of ordinary skill in the art would understand that plain claim language to be. And so to the extent that there was any resorting to extrinsic evidence here, it was to try to understand what that plain claim language means. Why isn't that improper? Or why is it improper? Go ahead. Sorry. I apologize, Your Honor. I missed the last part of that. I was just trying to understand why that was improper. I'm sorry. It's hard with this. I apologize, because I think I was repeating my question a little bit. So please, if you can, answer my question. If you want, I can re-ask it. No. No problem, Your Honor. I believe I understand. If not, we'll clarify. Counselor. The reason why it's improper is because of the limited role of the science specification. It is certainly the case that you can look outside and have an understanding. But when the specification is this clear and lacks that prohibition, that's what the board needs to weigh and be bound upon. If anything else, this counts the role of the specification, which is exactly what this board will adjust to. Counselor, you're well into your rebuttal. I assume you want to save it? I would, Your Honor, yes. We will save it for you. Ms. Merrill. May it please the court, Courtney Merrill for appellees. I agree with my colleague that we need to look at the context of the patent for clean construction. And it's important to note that the patent is explicitly directed to methods for performing 3GPP WCDMA. So that POSA looking at the patent is automatically looking into 3GPP technical specifications. In looking and taking a step back at the context of how we got here, the 625 applicant filed this patent application adding content directed to this particular proper noun, the Enhanced Absolute Grant Channel, EAGCH. Counsel would have us believe that it's just a coincidence that the 3GPP had only a few months before specifically defined, reached agreement on, defined and published amendments to the technical specifications explaining what an EAGCH is. And that a posita, particularly a posita that the board had determined was knowledgeable about the development of new and then existing specifications would have no idea what this meant and wouldn't have assigned some meaning to this important development by the 3GPP. And so when faced with a petition based on the very, very 3GPP documents that define this term, the applicant's response was to request a plain and ordinary meaning that reads out the very language of the term. It reads the word absolute out from the EAGCH. It also reads the word, the enhanced, the E out of the EAGCH. The E derives from the 3GPP's entire project creating these new channels and procedures for improving the efficiency of the uplink process. So we're not just reading out absolute grant, we're reading out the EAGCH developed by the 3GPP at this time that the posita the board had defined and appellant has never disagreed was knowledgeable about the WCDMA and 3GPP technical specification development process. So the board appropriately considered and was not persuaded by appellant's arguments in the proceedings below. And as my colleague agrees, the board did consider intrinsic evidence. The intrinsic evidence is in the final written decision. It considered the language that appellant has presented as definitional. It also considered language that appellants had presented arguing about the implication of figures that never are tied to EAGCH. It considered all this evidence and so to try to reframe the claim construction process as subject to the Texas Digital presumption is inconsistent with the board's explanation. As your honors have pointed out, the board instead started with the process of identifying what this term of art meant but not treating it as a presumption that had to be overcome, but rather as a starting point for the discussion of what is this proper noun. Not in any way applying the presumption of Texas Digital. Where does the board discuss the intrinsic evidence in connection with the claim construction dispute? Absolutely. So I would point your honors first to the introduction where the board starts with the explanation that... What page are you looking at? I apologize, your honor. Are you looking at the final decision or the institution decision? I'm looking at the final written decision, but you're right, your honor. The board also addressed this in the institution decision, but I'm actually turned right now to the final written decision. At appendix page 15, the board quotes the language that Pellant has pointed to here as defining the EAGCH. As your honors have noted, the case law that Pellant relies on to establish that it was a lexicographer defining EAGCH in a way here that is different than what that POSA would have understood from the approved 3GPP technical specifications lacks a clear disclaimer or identification that this is in some way intended to change what the 3GPP had defined the term to be. But is that really a fair use of the intrinsic evidence? What that looks like to me is that they started with the extrinsic evidence, got a definition from the extrinsic evidence, and then looked to the patent to see whether it disavowed or changed through lexicography what they defined from the extrinsic evidence, which seems contrary to Pellant's. I'd point respectfully, your honor, to the board had said that POSA would be understanding the EAGCH from the perspective of the 3GPP materials. They didn't assign a rigid definition of what exactly that means. They pointed to where in these technical specifications the characteristics of the channel had been identified, the absolute grants sent over the channel were identified and defined, but never said here are the specific requirements, only that this is a 3GPP defined term and a POSA, the POSA that Appellant did not disagree and did not contest, would be knowledgeable regarding these new and then existing technical specifications. I was just going to ask. The argument I'm hearing from opposing counsel is that this word was redefined by the inventor through lexicography in the patent specification. Why isn't the disclosure, I think it's in column three, where they say an enhanced absolute grant channel is blah blah blah, and they don't limit it to absolute grants. Why isn't that definitional? Your honor is obviously aware, and it's in the briefing, that there are occasions when is can be treated as definitional, but where we have an established term of art, there has to be something more. It has to be clear to the POSA that there is an intention here to change what is already in this term of art for the 3GPP defined. I don't see anything in this language that is inconsistent. The first sentence that your honors refer to on column three, line 14, is providing a very high level description that yes, an EAGCH is in fact one particular defined downlink channel. That sentence doesn't indicate to a POSA that the applicant is intending to change the meaning in some way to broaden it out. Can you be more specific? Because I think what you're saying is that there's nothing here that says that it's not limited to absolute grants. Is that what you mean? No, I'm sorry your honor if I misspoke. What I'm saying is, I see this sentence as just providing in the context of the 3GPP, this is one particular type of downlink channel. But I don't see this as saying it is just a downlink channel that anything can be sent down. Does that clarify my previous answer? Yeah, because I was giving you an easy question. My question was easy. I was saying nothing in here limits says that it will allow anything. But you answered that question well. Exactly right. And I appreciate the questions your honor. You asked earlier about that second sentence and whether or not it is possible a POSA would understand that that was intended to be consistent and to say that yes you are providing that level, that absolute level and maximum of transmission power and level of data. Which is a clear contrast to a relative. It doesn't say right? It doesn't say here absolute or relative. You must agree with that because there's similar language in the Korean application. Similar language to what your honor? To this language. The language that your referring to. The next sentence which is lines 18 to 20 or 19 where it says a command is how much transition power or level of data rate transmission is permitted to transmit. It doesn't say absolute or relative right? No, it does not say that your honor. But I also don't see in here any language that it would inform a POSA that the applicant here was intending for an EAGCH to be something different and broader than the at this point in time already defined EAGCH. Can I ask you something else? I mean at the time of the invention setting aside the full definition of EAGCH is there any evidence of what a person of ordinary skill in the art thought the words absolute grant meant? Well, we obviously have a dispute as between the parties what the time of invention is. The date of application April 2005 until and unless it can be shown that the claims are supported by an earlier priority date is the date of invention. And your question I believe your honor is what else would show what a POSA believe this to be? I guess I'm setting aside EAGCH. Is there any evidence in the record on the meaning of absolute grant either at the time of the Korean application or at the time that you contend is the effective filing date? So looking at each of those two separate dates absolute grants did not exist in 3GPP wireless telecommunications in 2004. But did they exist outside of that?  Did that was that was that a word is there any evidence in this record about what the phrase absolute grant means? I believe your honor you're intending to refer to appellants experts testimony regarding the DOCSIS cable standard is that what you're referring to? That is evidence in the record of what a very different standard to a different technology outside the scope of the POSA's knowledge that dealt with a different type of absolute grant.  But that is separate. I apologize. Did I misunderstand? No, no, that's fine. Thank you. Okay. But to my that is the only absolute grant introduced to the record. It was explicitly considered and rejected by the board because it is directed to a different standard for a different technology and not a technology within the knowledge of the POSA as defined. If we agree with the claim construction here what else if anything do we have to decide? I don't believe anything needs to be decided your honor. I believe the board got it right and as your honor has already pointed out I respectfully disagree with appellant that the board you know performed an impermissible Texas digital analysis but even if they had it would be harmless because in the context of the applicant excuse me the 625 patent where it is clear that the applicant is trying to inform the person of ordinary skill in the art that we are looking at methods intended for performance in 3GPP you are necessarily using 3GPP technical you know defined systems and channels in the technical specifications.  3G licensing arguing in the alternative that even under the board's construction that there is written description support in the Korean application. They are arguing that the Korean application which never mentions EACH because it did not exist nonetheless supports it I respectfully disagree. I was just confused about your answer because we still have to resolve that question even if we adopt the board's construction. We still have to resolve the question of  right? I believe appellant has conceded that if the board's construction stands it necessarily has already resolved priority because there is no support for a new board             this question  I will relinquish my remaining time. Thank you. Let me express the view of one judge. Personal opinion     think we ought to speak English and the patent profession in this court are often accused of using jargon and considering ourselves different from the mainstream of the law. If someone used that expression before the Supreme Court they would be disdainful. That's just my thought. Mr. DiMarco, you have two minutes for rebuttal. Yes, thank you. I wanted to directly to something my friend stated about doctors being outside       law. Thank you, counsel, we have your argument and the case is submitted.